# UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

BENNY LEE HODGE

*Petitioner-Appellant*

v.

LAURA PLAPPERT, Interim Warden

*Respondent-Appellee*

On Appeal from the United States District
Court for the Eastern District of Kentucky
Case No. 7:13-cv-00005

**(Death Penalty Case)**

# PETITION FOR REHEARING EN BANC BY INTERIM WARDEN LAURA PLAPPERT

**RUSSELL COLEMAN**
**Kentucky Attorney General**

Robert M. Duncan, Jr.
  *Deputy Attorney General*
Matthew F. Kuhn
  *Solicitor General*
Jacob M. Abrahamson
  *Assistant Solicitor General*

Office of the Kentucky
  Attorney General
700 Capital Avenue, Ste. 118
Frankfort, Kentucky 40601
(502) 696-5300
RobertM.Duncan@ky.gov
Matt.Kuhn@ky.gov
Jacob.Abrahamson@ky.gov

*Counsel for Interim Warden Laura Plappert*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..............................................................................ii

RULE 35(b) STATEMENT & INTRODUCTION...............................................1

BACKGROUND ............................................................................................2

ARGUMENT ..................................................................................................7

    I. The panel failed to follow binding precedent about how to interpret a state-court decision. ...............................................................................8

    II. The state court's decision was not contrary to U.S. Supreme Court precedent......................................................................................12

    III. This case is otherwise proper for rehearing. ................................................14

CONCLUSION ...........................................................................................17

CERTIFICATE OF COMPLIANCE .................................................................19

CERTIFICATE OF SERVICE ..........................................................................20

# TABLE OF AUTHORITIES

## Cases

*Brown v. Davenport*,
596 U.S. 118 (2022)..........................................................................8

*Calderon v. Thompson*,
523 U.S. 538 (1998)........................................................................15

*Cassano v. Shoop*,
10 F.4th 695 (6th Cir. 2021) .............................................................2

*Dunn v. Reeves*,
594 U.S. 731 (2021) (per curiam) ............................................1, 9, 10, 11

*Engle v. Isaac*,
456 U.S. 107 (1982)........................................................................15

*Epperson v. Commonwealth*,
809 S.W.2d 835 (Ky. 1990)..................................................................3

*Harrington v. Richter*,
562 U.S. 86 (2011)...................................................................2, 8, 16

*Hodge v. Commonwealth*,
2011 WL 3805960 (Ky. Aug. 25, 2011)...........................................*passim*

*Hodge v. Commonwealth*,
68 S.W.3d 338 (Ky. 2001)..................................................................3

*Hodge v. Haeberlin*,
579 F.3d 627 (6th Cir. 2009) ...............................................15, 16, 17

*Hodge v. Kentucky*,
133 S. Ct. 506 (2012) ....................................................................12

*Hodge v. White*,
2016 WL 4425094 (E.D. Ky. Aug. 17, 2016) ....................................... 5, 11

*In re Hill*,
81 F.4th 560 (6th Cir. 2023) (en banc) ................................................2

*Lockyer v. Andrade*,
538 U.S. 63 (2003)........................................................................13

*Nevada v. Jackson,*
    569 U.S. 505 (2013) (per curiam) ...........................................................13

*Rogers v. Mays,*
    69 F.4th 381 (6th Cir. 2023) (en banc) ......................................... 1, 2, 9

*Rompilla v. Beard,*
    545 U.S. 375 (2005)...................................................................................13

*Shinn v. Kayer,*
    592 U.S. 111 (2020) (per curiam) .............................................................8

*Shoop v. Cunningham,*
    143 S. Ct. 37 (2022)...................................................................................1

*Strickland v. Washington,*
    466 U.S. 668 (1984)....................................................................................7

*Wetzel v. Lambert,*
    565 U.S. 520 (2012) (per curiam) ............................................................1

*White v. Woodall,*
    572 U.S. 415 (2014)..................................................................................13

*Wiggins v. Smith,*
    539 U.S. 510 (2003)..................................................................................13

*Williams v. Taylor,*
    529 U.S. 362 (2000).............................................................................1, 14

*Wong v. Belmontes,*
    558 U.S. 15 (2009) (per curiam).............................................................16

*Woodford v. Visciotti,*
    537 U.S. 19 (2002) (per curiam)........................................1, 9, 10, 12

## Statutes

28 U.S.C. § 2254 ..............................................................................................7

## RULE 35(b) STATEMENT & INTRODUCTION

After denying habeas relief, this Court granted panel rehearing to award relief to death-row inmate Benny Hodge. The panel made two errors that warrant the full Court's intervention. First, the Court adopted a contrived reading of the Kentucky Supreme Court's decision while overlooking the totality of its analysis, contrary to binding precedent about how to interpret state-court decisions under AEDPA. *Dunn v. Reeves*, 594 U.S. 731, 742–43 (2021) (per curiam); *Woodford v. Visciotti*, 537 U.S. 19, 22–24 (2002) (per curiam); *Rogers v. Mays*, 69 F.4th 381, 391–92 (6th Cir. 2023) (en banc). Second, the panel incorrectly held that the Kentucky Supreme Court acted contrary to U.S. Supreme Court precedent. Although the panel tried, it identified no Supreme Court decision that stands for the rule it adopted. And indeed, Supreme Court precedent is consistent with the Kentucky court's decision. *Williams v. Taylor*, 529 U.S. 362, 398 (2000).

The stakes here justify rehearing. Hodge committed his crimes in 1985. If the panel's errors stand, Kentucky will have to redo Hodge's sentencing nearly four decades later, which "pos[es] the most daunting difficulties for the prosecution." *See Wetzel v. Lambert*, 565 U.S. 520, 525 (2012) (per curiam). Such an "affront to federalism and the rule of law . . . [is] intolerable." *See Shoop v. Cunningham*, 143 S. Ct. 37, 44 (2022) (Thomas, J., dissenting from denial of cert.). Even when

AEPDA is correctly applied, it "intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (citation omitted). The injury to state sovereignty is all the more profound when a federal court wrongly sets aside a lawfully imposed death sentence.

That's why this Court regularly uses its en banc authority to fix AEDPA errors. It has done so three times in just the last nine months. *Rogers*, 69 F.4th at 399; *In re Hill*, 81 F.4th 560, 572–73 (6th Cir. 2023) (en banc); *Fields v. Jordan*, 86 F.4th 218, 249–50 (6th Cir. 2023) (en banc). On top of that, the U.S. Supreme Court has reversed this Court nearly two dozen times "for not applying the deference to state-court decisions mandated by AEDPA." *Cassano v. Shoop*, 10 F.4th 695, 696–97 (6th Cir. 2021) (Griffin, J., dissenting from denial of reh'g en banc). The full Court should not allow the panel's errors to go uncorrected.

## BACKGROUND

**1.** In 1985, Hodge posed as an FBI agent to gain entry into an elderly doctor's home. *Hodge v. Commonwealth*, 2011 WL 3805960, at *4 (Ky. Aug. 25, 2011) (*Hodge I*). Once inside, Hodge murdered the doctor's college-aged daughter, Tammy Acker, while his accomplices strangled the doctor "with an electrical cord until he lost consciousness." *Id.* Hodge killed Tammy by stabbing her at least ten times. *Id.* "Afterwards, [Hodge] cooly told [an accomplice] that he knew Tammy

2

was dead because the knife had gone 'all the way through her to the floor.'" *Id.* Hodge also stole money from the doctor's home and admitted to "spreading all the money out on a bed and having sex with his girlfriend on top of it." *Id.* at *5.

A jury convicted Hodge of murder, robbery, and burglary. *Id.* at *1. The sentencing phase of Hodge's trial involved a stipulation that read: "Benny Lee Hodge has a loving and supportive family—a wife and three children. He has a public job work record and he lives and resides permanently in Tennessee." *Id.* at *2. The jury recommended a death sentence, and the judge imposed it. *Id.*

Hodge appealed to no avail. *Epperson v. Commonwealth*, 809 S.W.2d 835, 845 (Ky. 1990). He then sought state post-conviction relief. Kentucky's high court ordered an evidentiary hearing about whether Hodge's counsel was deficient in the penalty phase and if so whether it prejudiced Hodge. *Hodge v. Commonwealth*, 68 S.W.3d 338, 344–45 (Ky. 2001). The trial court held that hearing and denied relief.

On appeal, the Kentucky Supreme Court unanimously affirmed. *Hodge I*, 2011 WL 3805960, at *5. It recited the applicable standard from *Strickland*. *Id.* at *3. Applying that standard, the court accepted Kentucky's concession that Hodge's counsel was deficient by failing to conduct a "reasonable investigation to find mitigation evidence." *Id.* As to prejudice, the court quoted *Strickland*'s rule

3

that it must "independently reweigh[]" the evidence. *Id.* (citation omitted). And over the next 12 paragraphs, the court did exactly that. *Id.* at *3–5.

As to mitigation, the Kentucky court determined that the trial court had understated the force of Hodge's proof. *Id.* at *3. Hodge's childhood, the court noted, "was marked by extreme poverty, sustained physical violence, and constant emotional abuse." *Id.* The court then spent seven paragraphs discussing that evidence. *Id.* at *3–4.

The court then turned to the aggravating evidence, noting its duty to "weigh th[e] mitigation evidence against other aggravating circumstances." *Id.* at *4. On this side of the ledger, the court emphasized the "damaging evidence of [Hodge's] long and increasingly violent history, his numerous escapes from custody, and the obvious failure of several rehabilitative efforts." *Id.* It also factored in that Hodge's crimes were "not just brutal and vicious, but calculated and exceedingly cold-hearted." *Id.*

After summarizing the evidence, the court reiterated that it had "considered the totality of evidence" "including the proposed mitigation evidence." *Id.* at *5. Its bottom-line decision was: "Balancing all of the available evidence in mitigation and aggravation, [the court is] compelled to reach the conclusion that there exists no reasonable probability that the jury would not have sentenced Hodge to

death." *Id.* The court recognized that some of Hodge's mitigation evidence "perhaps" could have explained "a crime committed in a fit of rage as a compulsive reaction." *Id.* The court then stated (in a sentence that has become all that matters) that this mitigation evidence "offers virtually no rationale for the premeditated, cold-blooded murder and attempted murder of two innocent victims who were complete strangers to Hodge." *Id.* The court again stated that "[e]ven if the sentencing jury had this mitigation evidence before it, [the court] do[es] not believe, in light of the particularly depraved and brutal nature of these crimes, that [the jury] would have spared Hodge the death penalty." *Id.*

**2.** Hodge then went to federal court. He argued that Kentucky's court imposed a per se rule that mitigation evidence must explain a crime before it can matter. The district court disagreed. *Hodge v. White*, 2016 WL 4425094, at *29 (E.D. Ky. Aug. 17, 2016) (*Hodge II*). It determined that Kentucky's court "combed through every detail of [the mitigating] evidence and carefully considered its likely impact on a juror's decision." *Id.* The district court understood the Kentucky Supreme Court's decision to "communicate[] that the mitigation evidence, although compelling, must still be weighed against a brutal crime that is difficult for most individuals to understand." *Id.*

On appeal, this Court affirmed at first, over Judge White's partial dissent. The original panel determined that the state court "conducted the 'probing inquiry' required by the law." Dkt. 61-2 at 5 (citation omitted). Applying AEDPA, the panel reasoned that "although we may have reached a different conclusion, we cannot say the Kentucky Supreme Court's ruling was obviously wrong." *Id.*

Hodge sought rehearing. Among other things, he questioned a footnote in the decision identifying when a panel member (Judge Cook) took inactive senior status. *Id.* at n.*. In response, the two other panel members issued an order correcting this issue. Dkt. 65-1.

Hodge then sought rehearing a second time. More than two years later, and without re-argument, a panel with a new third member (Judge Clay) issued a superseding opinion. The reconstituted panel granted rehearing to reverse and remand with instructions to grant conditional habeas relief. Dkt. 80-2 at n.*, 12. The panel focused on the sentence from the Kentucky Supreme Court's decision noted above. It read that sentence to provide that "evidence regarding a defendant's horrific upbringing can only outweigh the aggravating factor of a particularly violent and cold-blooded crime where the defendant's background provides a 'rationale' for the crime." *Id.* at 9. But elsewhere, the panel stated that the Kentucky Supreme Court only "appear[ed]" to have so held. *Id.* at 7. This holding, the panel

continued, "was contrary to established Supreme Court precedent." *Id.* at 8. The panel therefore reviewed *Strickland* prejudice de novo. In only two paragraphs (ten paragraphs less than the state court's balancing), the panel found Hodge had established prejudice. *Id.* at 9–10.

Judge Siler dissented, explaining how his "original decision [for] the majority has now become the dissent." *Id.* at 13. In his view, "Hodge is totally wrong about the decision from the Kentucky Supreme Court." *Id.* at 14. And Judge Siler pointed out that "Hodge relies upon one sentence from the [state court's] opinion" while "ignor[ing] the remainder of the Kentucky Supreme Court's decision in which it repeatedly relied upon the *Strickland* standard in reviewing the evidence." *Id.*

## ARGUMENT

Under AEDPA, Hodge must show that the Kentucky Supreme Court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). So the *Strickland* prejudice question is not merely whether Hodge has shown a "reasonable probability" that a juror "would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland v. Washington*, 466 U.S. 668, 695 (1984). To satisfy AEDPA,

Hodge must show that the Kentucky Supreme Court's application of *Strickland* was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Harrington*, 562 U.S. at 103. More to the point, relief must be denied merely if "a fairminded jurist" could agree with the state court. *Shinn v. Kayer*, 592 U.S. 111, 121 (2020) (per curiam). If that standard "makes winning habeas relief . . . difficult, it is because Congress adopted [AEDPA] to do just that." *Brown v. Davenport*, 596 U.S. 118, 137 (2022).

Although the panel ruled for Hodge, it never suggested that he could win under this high standard. Instead, the panel sidestepped AEDPA deference by determining that the Kentucky Supreme Court applied the wrong legal standard. Dkt. 80-2 at 7–9. The panel's analysis is flawed on at least two fronts, and the Court should grant rehearing to say so.

## I. The panel failed to follow binding precedent about how to interpret a state-court decision.

The panel badly misinterpreted the Kentucky Supreme Court's decision, contrary to binding AEDPA precedent. As Judge Siler put it, the panel's gloss on the state court's decision is "totally wrong." *See id.* at 14 (Siler, J., dissenting).

Before walking through the Kentucky court's decision, it's important to explain why this interpretive issue matters. This issue is not just about how best to

read the state court's decision. It is about faithfully applying AEDPA. As this Court en banc just explained, "AEDPA instructs us to look for 'a *decision*'—not a few words or a stray thought—'that was contrary to, or involved an unreasonable application of, clearly established Federal law.'" *Rogers*, 69 F.4th at 392 (citation omitted). By focusing on the state court's "decision," AEDPA prohibits federal courts from "flyspeck[ing] state-court opinions." *Id.* at 391. Or as the U.S. Supreme Court has put it, AEDPA "demands that state-court decisions be given the benefit of the doubt." *Woodford*, 537 U.S. at 24. At bottom, AEDPA's "goal is to protect against 'extreme malfunctions in the state criminal justice system,' not to create a grading system for state-court opinion writing." *Rogers*, 69 F.4th at 392 (citation omitted).

The panel failed to heed these interpretive commands. As Judge Siler recounted, the panel "relie[d] upon one sentence from the opinion for a reversal" while "ignor[ing] the remainder" of the decision in which the state court "repeatedly relied upon the *Strickland* standard in reviewing the evidence." *See* Dkt. 80-2 at 14. The Supreme Court has rejected just such a rewrite of a state-court decision. For example, in *Dunn*, a federal court granted habeas relief by "recharacteriz[ing] [the state court's] case-specific analysis as a 'categorical rule.'" 594 U.S. at 742. That describes the panel's decision well. But the similarities do not end there. The

circuit court in *Dunn* also "excised a single statement from a lengthy block quote," *id.* at 738, even though the state court "devoted almost nine pages to discussing ineffective assistance of counsel," *id.* at 742. As the *Dunn* Court emphasized in reversing, "we have long foreclosed . . . 'mischaracterization of the state-court opinion.'" *Id.* at 743 (citation omitted).

The Kentucky Supreme Court spent 12 paragraphs weighing the mitigating and aggravating evidence. *Hodge I*, 2011 WL 3805960, at *3–5. The court said over and over—*five times*—that it was weighing the evidence. The court even quoted the applicable passage from *Strickland. Id.* at *3. So thorough was the state court's review that even the panel admitted that the state court "engaged in a comprehensive review" of Hodge's mitigation evidence and "weighed" it against the aggravating evidence. Dkt. 80-2 at 6. Under AEDPA, the panel should have ended its analysis there.

The panel, however, trained all its attention on a single sentence in the final paragraph of the Kentucky Supreme Court's analysis. Despite the state court saying five times that it was weighing the evidence, the panel read that sentence *not* to weigh the evidence, but to impose a per se "requirement that there be a causal connection between mitigation evidence and the underlying crime." *Id.* at 7. But the state court's sentence does not say that. Indeed, the panel conceded that the

sentence only "appears" to state a per se rule. *See id.* And in context, it makes no sense to read the sentence as holding that mitigating evidence matters only if it explains the crime. It would have been a "curious choice" for the state court to undertake such a comprehensive review of the evidence when a "single sentence applying a *per se* rule could have sufficed" to reject Hodge's prejudice argument. *See Dunn*, 594 U.S. at 743.

The sentence on which the panel relied is best understood as simply one case-specific way in which the state court weighed the evidence. All the sentence says is that some of Hodge's mitigating evidence "offers virtually no rationale for the premeditated, cold-blooded murder and attempted murder of two innocent victims who were complete strangers to Hodge." *Hodge I*, 2011 WL 3805960, at *5. Read in context, this sentence at most shows the state court, as part of its weighing analysis, considering the mismatch between Hodge's premeditated crimes and his mitigating evidence suggesting he may act in a "fit of rage as a compulsive reaction." *See id.* The district court put this point perfectly. The sentence shows the state court "discussing the potential impact of this mitigation evidence on the jurors, rather than reading a nexus requirement into *Strickland*'s prejudice prong." *Hodge II*, 2016 WL 4425094, at *29.

Even if the Court thinks this sentence is "imprecise," under AEDPA the state court gets the "benefit of the doubt." *Woodford*, 537 U.S. at 24. This is another interpretive rule that the panel failed to apply. While admitting that the state court's sentence only "appears" to state a per se rule, *see* Dkt. 80-2 at 7, the panel made it the only sentence in the state court's lengthy analysis that mattered. That context-blind approach flouts AEDPA.[1] When considering a decision that "painstakingly describes the *Strickland* standard," a federal court's "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Woodford*, 537 U.S. at 23–24.

## II. The state court's decision was not contrary to U.S. Supreme Court precedent.

The panel also misapplied AEDPA's contrary-to prong. That provision allows relief only if a state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that [is] materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives

---

[1] As the panel noted, Justice Sotomayor raised concerns about this same sentence when Hodge sought certiorari from the state court's decision. At that point, however, AEDPA did not apply. And Justice Sotomayor described the state court's sentence with the same "appears" qualifier as the panel. *Hodge v. Kentucky*, 133 S. Ct. 506, 510 (2012) (Sotomayor, J., dissenting from denial of cert.) (discussing what "the Kentucky Supreme Court appears to believe").

at a result different from [that] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citation omitted).

The panel identified no Supreme Court decision that clearly establishes that a court may never ask whether mitigating evidence explains the particular crime. In trying to do so, the panel cited two Supreme Court decisions. Dkt. 82 at 7–8 (citing *Wiggins v. Smith*, 539 U.S. 510, 538 (2003); *Rompilla v. Beard*, 545 U.S. 375, 393 (2005)). But neither bars courts from merely asking whether mitigation evidence explains the crime while weighing the evidence. Indeed, the panel divined such a rule not by quoting a holding from *Wiggins* and *Rompilla*, but by negative implication. That is, the panel discerned a clearly established holding by pointing out that the two cases failed to discuss mitigation evidence as a potential explanation for the particular crimes at issue. *See id.* AEDPA does not countenance reading between the lines of caselaw to tease out a holding from what was not said. If dicta does not qualify as a holding under AEDPA, *White v. Woodall*, 572 U.S. 415, 419 (2014), and if generalized holdings are not enough, *Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (per curiam), the Supreme Court's failure to discuss an issue while undertaking a fact-bound inquiry does not count either.

Although the panel got caught up in what *Wiggins* and *Rompilla* did not say, it should have considered what the Supreme Court did say in *Williams*. There, the

Supreme Court recognized that one way mitigation evidence can benefit a defendant is by explaining why he committed a particular crime. 529 U.S. at 398. While discussing how the mitigating evidence in *Williams* related to the defendant's "moral culpability," the Supreme Court stated that "[t]he circumstances recited in [the defendant's] several confessions are consistent with the view that in each case [his] violent behavior was a compulsive reaction rather than the product of cold-blooded premeditation." *Id.* After making this point, the Supreme Court chided the lower court for "fail[ing] to accord appropriate weight to the body of mitigation evidence available to trial counsel." *Id.*

The panel did not mention *Williams*. Yet it is not that different from what the Kentucky Supreme Court did. Whereas *Williams* recognized that mitigation evidence that explains a crime can benefit a defendant, the Kentucky court simply made the converse point as part of its larger weighing of the evidence. For this reason as well, the state court's decision is not contrary to U.S. Supreme Court precedent.

## III.   This case is otherwise proper for rehearing.

The panel's two legal errors more than justify rehearing. But the stakes here drive home the necessity of full Court review. Reopening Hodge's death sentence after all these years carries enormous consequences, most notably for Tammy's

family. After all, "[o]nly with real finality can the victims of crime move forward knowing the moral judgment will be carried out." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998). Beyond that, the panel's decision puts the Commonwealth to the task of retrying the sentencing phase of Hodge's trial nearly 40 years after his crimes. The "[p]assage of time, erosion of memories, and dispersion of witnesses may render retrial difficult, even impossible." *Engle v. Isaac*, 456 U.S. 107, 127–28 (1982).

The panel's errors cannot be downplayed by Hodge as affecting only this case. As Hodge previewed during oral argument, he intends to use the grant of habeas relief here to challenge his two other death sentences for a double murder he committed shortly before he killed Tammy. His theory is that the jury in that other case relied in part on his death sentence here. Oral Arg. at 29:10–30:50 (Oct. 20, 2020); *see also Hodge v. Haeberlin*, 579 F.3d 627, 648 (6th Cir. 2009) (*Hodge III*). Make no mistake, the Commonwealth will oppose any such follow-on effort, but there is no denying that Hodge believes the panel granted him three-for-one relief.

Another factor favoring rehearing is that this case becomes easy if the full Court corrects the two errors discussed above. Although four judges on this Court have considered this appeal, not one has suggested that Hodge is entitled to habeas relief if the Kentucky Supreme Court's weighing of the evidence receives

AEDPA deference. The state court's exhaustive weighing of the evidence with an appropriate citation to *Strickland*, which received a unanimous vote in Kentucky's high court, is not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Harrington*, 562 U.S. at 103.

This is not to understate Hodge's mitigating evidence. Indeed, the Kentucky Supreme Court criticized the trial court for not giving the evidence about Hodge's past enough weight. *Hodge I*, 2011 WL 3805960, at *3. But that accounts for only one side of the coin. As the U.S. Supreme Court has emphasized, mitigating evidence can be both "good and . . . bad." *See Wong v. Belmontes*, 558 U.S. 15, 26 (2009) (per curiam). And no doubt, Hodge's mitigating evidence cuts both ways. *See Hodge I*, 2011 WL 3805960, at *4.

As Judge Siler pointed out, this case is unique from a *Strickland* prejudice standpoint in that we have a good idea of how a jury would approach hearing about Hodge's past. Dkt. 80-2 at 13–14. That's because (as alluded to above) shortly before Hodge murdered Tammy, he murdered two other victims. *Hodge III*, 579 F.3d at 634. The jury in the other case heard from "thirteen mitigation witnesses who testified about Hodge's troubled past, including the way family members and the penal system unjustly harmed him." *Id.* at 647. Yet the jury in

that case still voted for death sentences. *Id.* at 636. To be sure, as the panel noted, the mitigation evidence in the other case is not identical to the mitigation proof here. Dkt.80-2 at 9 n.2. Even so, that an actual jury heard a similar mitigation case about the same defendant and still voted for death can only underscore the reasonableness of the Kentucky Supreme Court's balancing of the evidence here.

One final point. If the Court thinks this matter is a close call for rehearing, the case's procedural history puts it over the top. It's not every day that a death-row inmate loses his habeas appeal before winning it, with the deciding factor being the replacement of a judge late in the decisional process. Not only that, Judge Siler's dissent states that the en banc Court declined to rehear the original panel decision before panel rehearing was granted to award Hodge relief. *Id.* at 13. (This action is not visible on the public docket.) To be clear, as Judge Siler emphasized, this is not meant "to criticize the workings of this [C]ourt." *Id.* But at the very least, the Court's seesaw rulings demonstrate the need to get this case right.

## CONCLUSION

The full Court should rehear this case.

**RUSSELL COLEMAN**
**Kentucky Attorney General**

*s/ Matthew F. Kuhn*
Robert M. Duncan, Jr.                      Office of the Kentucky
  *Deputy Attorney General*                  Attorney General
Matthew F. Kuhn                            700 Capital Avenue, Ste. 118
  *Solicitor General*                       Frankfort, Kentucky 40601
Jacob M. Abrahamson                        (502) 696-5300
  *Assistant Solicitor General*             RobertM.Duncan@ky.gov
                                           Matt.Kuhn@ky.gov
                                           Jacob.Abrahamson@ky.gov

*Counsel for Interim Warden Laura Plappert*

**CERTIFICATE OF COMPLIANCE**

I certify that this petition for rehearing en banc complies with the type-volume requirements for such a petition, as it contains 3,898 words. Fed. R. App. P. 35(b)(2)(A) & 40(b)(1).

I also certify that this petition for rehearing en banc complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 15-point Garamond font.

*s/ Matthew F. Kuhn*

**CERTIFICATE OF SERVICE**

I certify that on March 5, 2024, the foregoing was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/ECF system. I also certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Matthew F. Kuhn*

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0034p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

BENNY LEE HODGE,

                    *Petitioner - Appellant*,

     *v.*

SCOTT JORDAN, Warden,

                    *Respondent - Appellee.*

> No. 17-6032

On Petition for Panel Rehearing

United States District Court for the Eastern District of Kentucky at Pikeville.
No. 7:13-cv-00005—David L. Bunning, District Judge.

Argued: October 20, 2020

Decided and Filed: February 22, 2024

Before: SILER, CLAY, and WHITE, Circuit Judges.[*]

———————————

## COUNSEL

**ARGUED:** Dennis J. Burke, DEPARTMENT OF PUBLIC ADVOCACY, LaGrange, Kentucky, for Appellant. Brett R. Nolan, OFFICE OF THE ATTORNEY GENERAL OF KENTUCKY, Frankfort, Kentucky, for Appellee. **ON APPELLANT BRIEF AND ON PETITION FOR PANEL REHEARING:** Dennis J. Burke, DEPARTMENT OF PUBLIC ADVOCACY, LaGrange, Kentucky, Dana C. Hansen Chavis, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. **ON APPELLEE BRIEF:** Joseph A. Newberg, II, OFFICE OF THE ATTORNEY GENERAL OF KENTUCKY, Frankfort, Kentucky, for Appellee. **ON RESPONSE TO PETITION FOR PANEL REHEARING:** Matthew F. Kuhn, Brett R. Nolan, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee.

———————————

[*]This case was the subject of a prior opinion, *Hodge v. Jordan*, 12 F.4th 640 (6th Cir. 2021), in which we affirmed the district court's denial of Hodge's petition for habeas corpus. After we filed that opinion, Judge Cook took inactive senior status, and Hodge filed a petition for rehearing. Judge Clay was assigned to replace Judge Cook on the panel, and rehearing was granted.

WHITE, J., delivered the superseding opinion of the court in which CLAY, J., joined. SILER, J. (pp. 13–14), delivered a separate dissenting opinion.

———————————————

## SUPERSEDING OPINION

———————————————

HELENE N. WHITE, Circuit Judge.  Benny Lee Hodge, a Kentucky death-row inmate, appeals the denial of his petition for habeas corpus.  Hodge's petition primarily concerns the ineffective assistance of his trial counsel at the sentencing phase.  Because the Kentucky Supreme Court applied a standard of prejudice that is contrary to established Supreme Court precedent, counsel's failure to present mitigation evidence was constitutionally deficient, and there is a reasonable probability that counsel's failure affected the outcome of Hodge's sentencing, we reverse the district court and remand with instructions to grant conditional habeas relief as to the penalty phase of Hodge's trial.  Hodge also raises jury-tampering and jury-bias claims, which we conclude are without merit.[1]

## I.

In August 1985, Hodge and two codefendants posed as FBI agents to enter the home of Dr. Roscoe Acker.  *Hodge v. Commonwealth*, No. 2009-SC-000791-MR, 2011 WL 3805960, at *4 (Ky. Aug. 25, 2011).  Once inside, they covered the heads of Dr. Acker and his college-aged daughter, Tammy, and forced Dr. Acker to open his safe.  *Id.*  A co-defendant then strangled Dr. Acker with an electrical cord until he lost consciousness, and Hodge stabbed Tammy at least ten times.  *Id.*  Hodge and his co-defendants stole about two million dollars from the safe.  *Id.* at *1.

Hodge was charged with and convicted of murder, robbery, and burglary.  During the sentencing phase of Hodge's trial, his counsel presented only a two-sentence stipulation, which was read to the jury: "Benny Lee Hodge has a loving and supportive family-a wife and three children.  He has a public job work record and he lives and resides permanently in Tennessee." *Id.* at *2.  The jury recommended that Hodge be sentenced to death and the trial court imposed a

———

[1]Although Hodge's brief argues that the prosecution withheld material impeachment evidence and failed to correct false or misleading testimony at his trial, we do not consider that claim because it was not certified for appellate review.  *See Abdur'Rahman v. Colson*, 649 F.3d 468, 473 (6th Cir. 2011).

death sentence the same day.  Hodge and his codefendant filed a combined direct appeal, which the Supreme Court of Kentucky denied.  *See Epperson v. Commonwealth*, 809 S.W.2d 835 (Ky. 1990).

Over the last three decades, Hodge has pursued several postconviction challenges.  In 1992, Hodge filed an unsuccessful state-court motion to vacate his conviction, alleging, among other things, ineffective assistance of counsel (IAC) and jury tampering.  *Hodge*, 2011 WL 3805960, at *1.  On appeal, the Kentucky Supreme Court ordered the trial court to hold an evidentiary hearing.  *Hodge v. Commonwealth*, 68 S.W.3d 338, 345 (Ky. 2001).  The trial court did so and denied relief.  The Kentucky Supreme Court affirmed.  *Hodge*, 2011 WL 3805960.  Hodge petitioned the Supreme Court of the United States for a writ of certiorari, which was denied.  *Hodge v. Kentucky*, 568 U.S. 1056 (2012) (mem.).  In 2013, Hodge sought a writ of habeas corpus in the United States District Court for the Eastern District of Tennessee.  *Hodge v. White*, No. CV 13-5-DLB-EBA, 2016 WL 4425094 (E.D. Ky. Aug. 17, 2016).  The district court denied Hodge's petition, and this appeal followed.

## II.

As described by the Kentucky Supreme Court, postconviction counsel provided considerable mitigation evidence that trial counsel failed to present to the jury at the sentencing phase:

> [W]e turn to a review of the mitigation evidence that was available at the time of Hodge's trial.  His mitigation case would have been based on his childhood, which was marked by extreme poverty, sustained physical violence, and constant emotional abuse.  The trial court's characterization of Hodge's childhood as "difficult" is not inaccurate, but certainly inadequate.
>
> The evidence established that Hodge's mother, Kate, was married to six different men, all of whom were substance abusers and some of whom were physically abusive to Kate.  She married Billy Joe when Hodge was eight years old.  The majority of Hodge's evidence concerned the extreme violence he suffered at the hands of his stepfather.  Again, the trial court's description of Billy Joe as "particularly abusive" is insufficient.
>
> Billy Joe was described by at least four witnesses as a "monster."  His rage was explosive and violent, often triggered by Kate's shows of affection towards her children.  At other times, he was incited for no apparent reason and the household lived in constant fear as a result.  He would regularly rape Kate, threaten her with

a gun, and beat her.  On one occasion, Billy Joe assaulted Hodge's mother so violently that she suffered a miscarriage.  Hodge's sisters testified that, more than once, they thought Kate had been beaten to death.

Hodge's mother and sisters agreed that Billy Joe was more violent and abusive towards [Hodge] than any other person in the house.  This is perhaps because Hodge, being the only male child in the home, often tried to defend his mother and sisters from physical attacks.  He was regularly beaten with a belt and metal buckle, which left bruises and welts on his body that were observed by family members and neighbors alike.  At other times, he was kicked, thrown against walls, and punched.  Hodge's half-sister specifically recalled an occasion when Billy Joe rubbed Hodge's face in his own feces.  His sisters testified that Billy Joe made [Hodge] watch while he brutally killed [Hodge's] dog.  Because his mother, who was evidently paralyzed by fear and substance abuse, refused to protect Hodge, he often ran away from home.

School records indicate that Hodge was of normal intelligence and received average grades through elementary school.  After Billy Joe entered the home, his grades declined, he became withdrawn, and he was often truant.  He began stealing at the age of twelve and was sentenced to a juvenile detention facility when he was fifteen.

There was testimony that, at the Tennessee residential facility, Hodge was subjected to regular beatings.  He escaped from the facility twice and once refused to return after a furlough.  After finally being released at the age of sixteen, Hodge assaulted his stepfather, which resulted in his return to the juvenile facility until he was eighteen years old.

At the age of twenty, Hodge pled guilty to his first felonies: burglary and grand larceny.  He escaped from custody four days later.  Following his capture and eventual parole, he was convicted of a separate armed robbery.  Again, he escaped and was recaptured.  After serving nearly eight years in prison for that felony, Hodge was again paroled.  He was thirty-four years old at the time he killed Tammy Acker.  He had been married three times and had fathered three children.

At the evidentiary hearing, Hodge presented the expert opinions of two psychologists, both of whom had assessed him in 2009.  Both agreed that the violence in Hodge's childhood home was ruinous to his development and compounded by the physical abuse occurring at the Tennessee residential facility.  One of the psychologists diagnosed Hodge with post traumatic stress disorder (PTSD) and opined that it was present at the time of Hodge's crimes and trial.  This expert further testified that PTSD can render a person violent, hypervigilant, aggressive, and erratic.  Both psychologists found it particularly interesting to note that Hodge did not inflict any abuse on his own children and was described by all as a loving father.

*Hodge*, 2011 WL 3805960, at *3-4. Hodge's history of being abused, as well as his mental-illness diagnosis, went unheard by the jury, who instead heard only the two-sentence stipulation provided by counsel.

### III.

To prevail on a habeas claim premised on IAC, Hodge must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). He must show both "that [his] lawyers performed well below the norm of competence in the profession and that this failing prejudiced [his] case." *Caudill v. Conover*, 881 F.3d 454, 460 (6th Cir. 2018) (citing *Strickland*, 466 U.S. at 687). And because the Kentucky Supreme Court has already rejected Hodge's IAC claim, the Antiterrorism and Effective Death Penalty Act (AEDPA) also requires that he demonstrate that the Kentucky Supreme Court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2554(d)(1). In sum, we must give double deference to the state court's determination. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011). A district court's denial of a habeas petition is reviewed de novo. *Mitchell v. MacLaren*, 933 F.3d 526, 531 (6th Cir. 2019). "The district court's findings of fact are reviewed for clear error, and its legal conclusions on mixed questions of law and fact are reviewed de novo." *Id.*

### A.

Counsel had a duty to reasonably investigate and present the mitigating evidence set out above; but the jury heard no mitigation evidence beyond the two-sentence stipulation. *See Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003) (citing *Strickland*, 466 U.S. at 691). Because counsel failed to investigate, it is undisputed that his performance fell below the constitutional bar, as the Kentucky Supreme Court found. *Hodge*, 2011 WL 3805960 at *3; *see Williams v. Taylor*, 529 U.S. 362, 371 (2000) ("Counsel's failure to discover and present . . . significant mitigating evidence was below the range expected of reasonable, professional competent assistance of counsel." (internal quotation marks and citation omitted)).

No. 17-6032                    *Hodge v. Jordan*                    Page 6

*Strickland*'s second prong requires Hodge to show that counsel's constitutionally deficient representation "prejudiced [his] case." *Caudill*, 881 F.3d at 460 (citing *Strickland*, 466 U.S. at 687). "In the capital sentencing context, the prejudice inquiry asks 'whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded the balance of aggravating and mitigating circumstances did not warrant death.'" *Shinn v. Kayer*, 592 U.S. 111, 117–18 (2020) (quoting *Strickland*, 446 U.S. at 695). Where, as here, the unanimous jury submitted a recommendation for the death penalty, this means that Hodge must demonstrate "a reasonable probability that at least one juror would have struck a different balance." *Wiggins*, 539 U.S. at 537. The chance one juror would have voted against death "must be substantial, not just conceivable," *Richter*, 562 U.S. at 112, and must be demonstrated with "evidence that 'differ[s] in a substantial way—in strength and subject matter—from the evidence actually presented at sentencing,'" *Caudill*, 881 F.3d at 464 (alteration in original) (quoting *Hill v. Mitchell*, 400 F.3d 308, 319 (6th Cir. 2005)).

In denying Hodge's IAC claim, the Kentucky Supreme Court engaged in a comprehensive review of Hodge's traumatic childhood and weighed that history against "damaging evidence of [Hodge's] long and increasingly violent criminal history" as well as the "heinous nature" of the crime. *Hodge*, 2011 WL 3805960, at *4-5. The court concluded that:

> There is no doubt that Hodge, as a child, suffered a most severe and unimaginable level of physical and mental abuse. Perhaps this information may have offered insight for the jury, providing some explanation for the career criminal he later became. If it had been admitted, the PTSD diagnosis offered in mitigation might have explained Hodge's substance abuse, or perhaps even a crime committed in a fit of rage as a compulsive reaction. But it offers virtually no rationale for the premeditated, cold-blooded murder and attempted murder of two innocent victims who were complete strangers to Hodge. Many, if not most, malefactors committing terribly violent and cruel murders are the subjects of terrible childhoods.

*Id.* at *5. Based on that assessment, the Kentucky Supreme Court determined that there was no reasonable probability that the jury would not have imposed the death penalty if presented with Hodge's mitigation evidence and Hodge was not prejudiced by counsel's deficient representation. *Id.*

In considering the Kentucky Supreme Court's resolution of the IAC claim, the district court found that although "reasonable jurists could certainly disagree with the Kentucky Supreme Court's analysis, its ruling is not 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Hodge*, 2016 WL 4425094, at *29 (quoting *Richter*, 562 U.S. at 103).

## B.

### 1.

A federal court may grant habeas relief if the state-court decision was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is "contrary to clearly established federal law if 'the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law,' or 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at' an opposite result." *Carter v. Mitchell*, 829 F.3d 455, 468 (6th Cir. 2016) (alteration in original) (quoting *Williams*, 529 U.S. at 405). The Kentucky Supreme Court's requirement that there be a causal connection between mitigation evidence and the underlying crime is contrary to established Supreme Court precedent. Although the Kentucky Supreme Court was entitled to reweigh the mitigating and aggravating evidence, the court appears to have determined that in instances of particularly brutal or premeditated murder, evidence of the defendant's difficult upbringing can only be weighty enough to sway the jury to the extent it offers a "rationale" for the murder. This reasoning is contrary to the Supreme Court's cases applying *Strickland*'s prejudice prong.

In *Wiggins*, the Supreme Court held that a Maryland death-row inmate, who was found guilty of drowning a seventy-seven-year-old woman in her bathtub, was prejudiced by counsel's failure to produce evidence of a childhood characterized by extreme neglect and physical and sexual abuse. 539 U.S. at 538. Although the crime was deeply disturbing, the Court explained that evidence of the defendant's extremely difficult childhood, taken with other mitigating evidence, "'might well have influenced the jury's appraisal' of Wiggins' moral culpability." *Id.*

(quoting *Williams*, 529 U.S. at 398).   The question whether mitigation evidence provided an explanation or a rationale for the crime had no role in the Court's analysis.

Similarly, in *Rompilla v. Beard*, 545 U.S. 374 (2005), the Court considered whether a Pennsylvania death-row inmate was prejudiced by his counsel's failure to investigate and present mitigation evidence that the defendant had grown up in a dysfunctional home similar to Hodge's, had endured extreme abuse as a child, and had significant mental-health problems likely resulting from the abuse.   *Id.* at 391-93.   Rompilla's crime was also brutal:  he was found guilty of murdering a bar owner during a burglary by stabbing him and setting him on fire, and the jury specifically found that Rompilla committed the murder by means of torture.   *Rompilla v. Horn*, 355 F.3d 233, 236-38 (3d Cir. 2004).   Rompilla also had a history of violent felonies, including a conviction for a factually similar crime in which he had burglarized a bar after closing, raped the bar owner, and slashed her with a knife.   *Id.* at 237.   Nonetheless, the Supreme Court found that although it is "possible that a jury could have heard [the mitigating evidence] and still have decided on the death penalty," the "mitigating evidence, taken as a whole, might well have influenced the jury's appraisal of Rompilla's culpability, and the likelihood of a different result if the evidence had gone in [was] sufficient to undermine confidence in the outcome actually reached at sentencing."   *Rompilla*, 545 U.S. at 393 (internal quotation marks and citations omitted).   Although there are factual differences between this case and *Rompilla* that go to the weight of the mitigation evidence, *Rompilla* neither held nor implied that mitigating evidence can only sway a jury in brutal murder cases if it offers a rationale for the crime.   The facts of Rompilla's conviction were undeniably brutal, and his mitigation evidence did nothing to explain the crime.

Based on these cases, which were decided well before the Kentucky Supreme Court's denial of Hodge's post-conviction appeal, we conclude that the Kentucky Supreme Court's reasoning was contrary to established Supreme Court precedent.   Although a state court's weighing of aggravating and mitigating factors is entitled to deference and may not be disturbed unless unreasonable "beyond any possibility for fairminded disagreement," *Richter*, 562 U.S. at 103, we are not concerned here with the weighing of the factors but, rather, the standard the Kentucky Supreme Court applied in conducting its analysis.   The Kentucky Supreme Court's

rationale that evidence regarding a defendant's horrific upbringing can only outweigh the aggravating factor of a particularly violent and cold-blooded crime where the defendant's background provides a "rationale" for the crime is an incorrect statement of Supreme Court precedent. And as Justice Sotomayor observed in her dissent from the denial of certiorari in this case, "[t]he Kentucky Supreme Court's brief discussion of the weight and impact of Hodge's mitigation evidence reasonably suggests that its prejudice determination flowed from its legal errors." *Hodge*, 133 S. Ct. at 510 (Sotomayor, J., dissenting from denial of certiorari). That error, rather than the weight the Kentucky Supreme Court accorded to aggravating and mitigating evidence, is what makes the court's decision contrary to established Supreme Court precedent.

## 2.

Without any requirement to prove a causal "nexus" between the mitigation evidence and Hodge's crime, we return to the prejudice analysis. Hodge has made the requisite showing of prejudice. At the sentencing phase, "[t]he judge and jury . . . heard almost nothing that would humanize [Hodge] or allow them to accurately gauge his moral culpability." *Porter v. McCollum*, 558 U.S. 30, 41 (2009); *see also Wiggins*, 539 U.S. at 537 ("Wiggins' sentencing jury heard only one significant mitigating factor-that Wiggins had no prior convictions. Had the jury been able to place petitioner's excruciating life history on the mitigating side of the scale, there is a reasonable probability that at least one juror would have struck a different balance."). And the likelihood that the state would have provided additional damaging information about Hodge's criminal history and use of drugs in response to any mitigation evidence does not render counsel's failure harmless. *Foust v. Houk*, 655 F.3d 524, 546 (6th Cir. 2011) ("Powerful aggravating circumstances, however, do not preclude a finding of prejudice. . . . The new evidence about Foust's family history is overwhelming, and it undermines reasonable confidence in the reliability of Foust's death sentence.").[2]

---

[2]The dissent focuses on *Hodge v. Haeberlin*, 579 F.3d 627 (6th Cir. 2009), involving Hodge's conviction and sentence for a separate murder, to show that in a different case, counsel's presentation of mitigating evidence— which opened the door for the prosecution to present aggravating evidence—did not sway the jury, which still recommended a death sentence. But "the *Strickland* test 'of necessity requires a case-by-case examination of the evidence.'" *Williams*, 529 U.S. at 391 (citation omitted). The dissent does not, and cannot, say that the mitigation

The unheard mitigation evidence here was substantial and significant.  Hodge suffered from "a most severe and unimaginable level of physical and mental abuse" during his childhood and adolescent years.  *Hodge*, 2011 WL 3805960, at *5.  "Had the jury been able to place [Hodge's] excruciating life history on the mitigating side of the scale, there is a reasonable probability that at least one juror would have struck a different balance."  *Wiggins*, 539 U.S. at 537.  Accordingly, we reverse the district court's denial of habeas on Hodge's IAC claim.

## IV

Hodge also alleges jury tampering.  The Kentucky Supreme Court rejected this claim on the basis that Hodge failed to provide credible evidence of jury tampering.

Hodge's star witness at his postconviction evidentiary hearing was Gary Rogers, the man "responsible for overseeing the sequestered jury."  *Hodge*, 2011 WL 3805960, at *1.  But Rogers had significant credibility issues.  To be sure, he testified that: (1) "he saw the jury foreman talking to [the Commonwealth's Attorney] at the courthouse, though he did not overhear the conversation"; (2) "he saw [the Commonwealth's Attorney] in the parking lot of the hotel where the jury was sequestered"; and (3) he "remembered that one of the jurors was provided three bottles of vodka and others with televisions and newspapers."  *Id*.  But Rogers contradicted those statements moments later.  *Id.*  Indeed, he "emphatically testified that no one approached any juror and that no juror had access to television or newspapers."  *Id*.

Moreover, Rogers was a convicted felon.  He claimed the conviction was connected to "his attempts to assist Hodge and Epperson," but it was not.  *Id.*  Rogers also denied ever

---

evidence presented in Hodge's other case was identical to the mitigation evidence Hodge points to here.  The available description suggests the jury in that case heard a less devasting version of Hodge's life and heard no assessment of the impact of his childhood on his mental state.  *See Hodge v. Haeberlin*, No. CIV A. 04-CV-185-KKC, 2006 WL 1895526, at *5 (E.D. Ky. July 10, 2006), *aff'd*, 579 F.3d 627 (6th Cir. 2009) (noting that Hodge's family members "testified to his rough treatment by a series of stepfathers when he was growing up"); *id.* at *83 ("[C]ounsel . . . failed to obtain the services of a mental health expert to testify as to how certain hardships in Hodge's childhood would have impacted him.").  And notably, Hodge was sentenced in this case in 1986, but was not sentenced in his other case until 1996.  So, although the prosecution in this case could not present any evidence of a conviction for another murder, in Hodge's other case relied on by the dissent, the jury heard about Hodge's conviction in the present case.  *See Hodge*, 2006 WL 1895526, at *5 (describing prosecution's witness at the penalty phase "testifying about the petitioner's prior convictions and presenting certified records thereof," including "1986[] convictions for robbery in the first degree, burglary in the first degree, criminal attempt to commit murder, and capital murder, for which he was sentenced to . . . death for the murder").

speaking to or giving statements to the Department of Public Advocacy attorneys and investigators about the allegations. Although that is certainly untrue, even his statements to those individuals were inconsistent.

Any residual belief in Rogers's claims was further undermined by the testimony of an alternate juror, Marsha Hogg Thursty, who disputed all of Rogers's allegations. "She testified that no jurors were allowed visitors during sequestration and that no one communicated with the jury." *Id*. at *2. She also "testified that the jury did not discuss the case and that she had no knowledge of anyone watching television or listening to the radio." *Id*. Although she suffered from PTSD and bipolar disease, the trial court (and the Kentucky Supreme Court) credited her testimony. *Id*.

After review of the trial court's findings, the Kentucky Supreme Court found there was "no credible evidence presented to support a conclusion that any jury tampering or misconduct occurred." *Id*. The Kentucky Supreme Court's decision is both reasonable and consistent with Supreme Court precedent. Therefore, Hodge has not met his burden under AEDPA.

## V.

Hodge did not raise his juror-bias claim in state court. Instead, he asserted that counsel was ineffective for failing to inquire or learn about the relationship between the Commonwealth's attorney and the jury foreperson. But raising an ineffective assistance claim does not preserve the merits of the underlying substantive claim. *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008). And Kentucky state procedural rules would now bar consideration of this claim. *See Hodge*, 579 F.3d at 637-38. Therefore, Hodge must excuse his procedural default by showing cause and prejudice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). He has not done so. Accordingly, his juror-bias claim was defaulted.

## VI.

Because the Kentucky Supreme Court applied an incorrect legal standard of prejudice that is contrary to Supreme Court precedent and Hodge's unheard mitigation testimony considered with the totality of the evidence creates "a reasonable probability that at least one

No. 17-6032                          *Hodge v. Jordan*                          Page 12

juror would have struck a different balance," *Wiggins*, 539 U.S. at 537, we **REVERSE** the district court's denial of habeas relief on Hodge's IAC claim and **REMAND** with instructions to grant conditional habeas relief as to the penalty phase.

————————————

**DISSENT**

————————————

SILER, Circuit Judge, dissenting.  I respectfully dissent for the reasons set out in the majority opinion filed on September 10, 2021, denied on a petition for an en banc rehearing, but granted on the petition for a rehearing by the original panel.  However, in the meantime, one of the original panelists in the majority, Judge Cook, took inactive status, and was replaced by another judge, who joined the original dissent to create a new majority contrary to the original majority opinion in this matter.  I recite this not to criticize the workings of this court, but to demonstrate to the readers why the original decision of the majority has now become the dissent.

My position can be found in the original majority opinion, *Hodge v. Scott Jordan*, 12 F.4th 640 (6th Cir. 2021), but I add certain other circumstances herein which support my proposed affirmance of the Kentucky Supreme Court's decision that there was insufficient prejudice to grant the writ under *Strickland v. Washington*, 466 U.S. 668 (1984).  The Kentucky Supreme Court found that defense counsel, Dale Mitchell, was ineffective, because his only evidence in the mitigation part of the trial was that Hodge had "a loving supportive family — a wife and three children" and had "a public job work record."  The prosecution introduced no evidence in the mitigation part of the trial.

I bring to the attention of the court another case involving Hodge in *Hodge v. Haeberlin*, 579 F.3d 627 (6th Cir. 2009), which was decided before our case was argued, but involved part of the crime spree in this case.  In that companion case, in which Hodge was convicted of murder and the jury returned a verdict of death, defense "counsel presented thirteen mitigation witnesses who testified about Hodge's troubled past, including the way family members and the penal system unjustly harmed him." *Id* at 647.   Moreover, that invited the Commonwealth's opportunity to present Hodge's previous criminal convictions, including his conviction and death sentence for capital murder, robbery in the first degree, burglary in the first degree, and criminal attempt to commit murder, from this case, but also armed robbery, escape, and felonious assault in Tennessee. *Hodge v. Haeberlin*, No. 04-cv-185-KKC, 2006 WL 1895526, at *5 (E.D. Ky. July

10, 2006). This is similar evidence which would have been presented in this case, had defense counsel chosen to make a record. Hodge is totally wrong about the decision from the Kentucky Supreme Court, as the district court below found. While the Kentucky Supreme Court balanced all of the available evidence in mitigation and aggravation, Hodge relies upon one sentence from the opinion for a reversal. Hodge ignores the remainder of the Kentucky Supreme Court's decision in which it repeatedly relied upon the *Strickland* standard in reviewing the evidence. *See Hodge v. Commonwealth*, No. 2009-SC-0791, 2011 WL 3805960 (Ky. Aug. 25, 2011). It stated that "the evidence of Hodge's abusive childhood would have also included the damaging evidence of his long and increasingly violent criminal history, his numerous escapes from custody, and the obvious failure of several rehabilitative efforts." *Id.* at *4. It went on to say: "Even if the sentencing jury had this mitigation evidence before it, we do not believe, in light of the particularly depraved and brutal nature of these crimes, that it would have spared Hodge the death penalty." *Id.* at *5.

"[A] federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn v. Cayer*, 592 U.S. 111, 112 (2020) (quoting from *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). The Kentucky Supreme Court did not err in this case.

I would affirm the decision of the district court.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 17-6032

BENNY LEE HODGE,

    Petitioner - Appellant,

    v.

SCOTT JORDAN, Warden,

    Respondent - Appellee.

> **FILED**
> Feb 22, 2024
> KELLY L. STEPHENS, Clerk

Before:  SILER, CLAY, and WHITE, Circuit Judges.

# SUPERSEDING JUDGMENT

On Petition for Panel Rehearing

UPON CONSIDERATION OF the original briefs and arguments of counsel,

AND FURTHER CONSIDERING the appellant's petition for panel rehearing and the Warden's response,

IT IS NOW ORDERED that the district court's denial of Benny Lee Hodge's petition for a writ of habeas corpus is REVERSED and REMANDED with instructions to grant conditional habeas relief as to the penalty phase of Hodge's trial.  We DECLINE to the consider Hodge's other claims because they were not certified for appellate review.

**ENTERED BY ORDER OF THE COURT**

_Kelly L. Stephens_

Deborah S. Hunt, Clerk